UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MARLON GUARDADO GALEAS, | ) |
| | ) |
| ANGELICA APOLINAR JULIAN, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Civil Action No. 3:25-cv-552 |
| v. | ) |
| | ) Judge: Hon. _____ |
| KRISTI NOEM, | ) |
| Secretary, Department of Homeland Security, | ) |
| | ) **COMPLAINT FOR WRIT OF MANDAMUS** |
| ANGELICA ALFONSO-ROYALS, | ) |
| Acting Director, U.S. Citizenship and Immigration Services, | ) |
| | ) |
| JOHN DOE, | ) |
| Director, Vermont Service Center, U.S. Citizenship & Immigration Services, | ) |
| | ) |
| CHRISTOPHER HEFFRON, | ) |
| Director, Charlotte Field Office, U.S. Citizenship & Immigration Services, | ) |
| | ) |
| Defendants. | ) |

## INTRODUCTION

**COME NOW**, Plaintiffs, Marlon Guardado Galeas and Angeica Apolinar Julian (collectively, "Plaintiffs"), by and through undersigned Counsel, before this Court to file this COMPLAINT, requesting that this Court compel officers of the U.S. Citizenship and Immigration Services (hereinafter referred to as "USCIS") to merely place their names on the U Visa waiting list as required by the plain language of the regulations and to issue work authorization pursuant to statute.

# JURISDICTION AND VENUE

1. This Court has jurisdiction over this mandamus action pursuant to the following:

    A. 28 U.S.C. §1331, federal question jurisdiction;

    B. 5 U.S.C. §§ 555(b) & 706(1), the Administrative Procedures Act ("APA");

    C. 8 U.S.C. §1329, Immigration & Naturalization Act; and

    D. 28 U.S.C. § 1361, regarding an action to compel an officer of the United States to perform his duty.

2. Venue is proper in the Western District of North Carolina under 28 U.S.C. § 1391(e), as the action is against defendants who are officers or employees of the United States; a substantial part of the events giving rise to the instant claim occurred in this district; and the Department of Homeland Security and USCIS do business in this district.

# PARTIES

3. Plaintiff Marlon Guardado Galeas ("Mr. Guardado") is a citizen and national of Honduras and is legally married to Plaintiff Angelica Apolinar Julian ("Ms. Apolinar"), a citizen and national of Mexico. On December 11, 2024, at over 21 years of age, Mr. Guardado applied for U-1 Visa status through Form I-918, Application for U Nonimmigrant Status,[1] as well as for U-2 Visa status for his wife, through Form I-918, Supplement A, Petition for Qualifying Family Member of U-1 Recipient.[2]

4. Defendant Kristi Noem is sued in her official capacity as the Secretary of the Department of Homeland Security. In this capacity, she has responsibility for the administration of the immigration laws pursuant to 6 U.S.C. § 251 and routinely does and transacts business in this district.

---

[1] **Exhibit A**, Receipt Notice for Form I-918.
[2] **Exhibit B**, Receipt Notice for Form I-918A.

5. Defendant Angelica Alfonso-Royals is sued in her official capacity as the Acting Director of U.S. Citizenship and Immigration Services (hereafter "USCIS"), a bureau of the Department of Homeland Security. In this capacity, she has responsibility for the administration of the immigration laws and routinely does and transacts business in this district.

6. Defendant John Doe is sued in his official capacity as the Director of the USCIS Vermont Service Center, which is primarily charged with the responsibility of processing U-Visa applications. In this capacity, he has responsibility for the administration of the immigration laws and routinely does and transacts business at the center.

7. Defendant Christopher Heffron is sued in his official capacity as the Director of the USCIS Charlotte Field Office. In his capacity, he has responsibility for the adjudication of applications for immigration benefits filed by eligible immigrants such as Plaintiff, and he routinely does and transacts business in this district (hereinafter, Defendants will be collectively referred to as "Defendant USCIS").

## APPLICABLE IMMIGRATION LAW

### The U Visa Program, 8 U.S.C. § 1101(a)(15)(U)

8. On October 28, 2000, Congress created the U Visa program. *See* Victims of Trafficking and Violence Prevention Act of 2000 (VTVPA), Pub. L. No. 106-386, Title V, § 1513, 114 Stat. 1464, 1533 (2000).

9. Concerned that "[i]mmigrant women and children are often targeted to be victims of crimes committed against them in the United States" and that "[a]ll women and children who are victims of these crimes committed against them in the United States must be able to report these crimes to law enforcement and fully participate in the investigation of the crimes[,]" Congress acted to establish the U Visa program in order to "strengthen the ability of law

enforcement agencies to detect, investigate, and prosecute" certain serious crimes "while offering protection to victims of such offenses in keeping with the humanitarian interests of the United States." *See* VTVPA § 1513(a), 114 Stat. 1533.

10. The U Visa program creates a mechanism for noncitizen victims of serious crime to safely engage law enforcement and, likewise, for law enforcement to engage immigrant communities to deter, prevent, and prosecute criminal activity for the betterment of United States.

11. The U Visa was created to strengthen the ability of law enforcement agencies to investigate and prosecute serious crimes and trafficking in persons, while offering protections to victims of such crimes without the immediate risk of being removed from the country. By providing victims of crime with an avenue for regularization of their immigrant status, the U Visa encourages victims to work and cooperate with law enforcement agencies. Congress also aimed to strengthen relations between law enforcement and immigrant communities by increasing cooperation and removing some of the fear of deportation held by many undocumented migrants. *See, e.g.*, *U and T Visa Law Enforcement Resource Guide*, Department of Homeland Security (January 4, 2016), https://www.dhs.gov/sites/default/files/publications/U-and-T-Visa-Law-Enforcement-Resource%20Guide_1.4.16.pdf.

12. A noncitizen is eligible for status under the U Visa program if (1) they suffered substantial physical or mental abuse as a result of having been a victim of one of the enumerated crimes; (2) they possess or possessed information concerning the criminal activity; (3) they have been helpful, are being helpful, or are likely to be helpful to a Federal, State, or local law enforcement official, to a Federal, State, or local prosecutor, to a Federal or State judge, to

the Service, or to other Federal, State, or local authorities investigating or prosecuting the criminal activity; and (4) the criminal activity violated the laws of the United States or occurred in the United States (including in Indian country and military installations) or the territories and possessions of the United States. *See* 8 U.S.C. § 1101(a)(15)(U).

13. In addition, if the eligible noncitizen is over 21 years of age, their spouse is eligible for status under the U Visa program. 8 U.S.C. § 1101(a)(15)(U)(ii)(II).

14. A statutory cap limits the grant of U Visas to 10,000 per fiscal year. 8 U.S.C. § 1184(p)(2)(A). *See* 8 U.S.C. § 1184(p)(2)(A); 8 C.F.R. § 214.14(d)(1). The statutory cap only applies to principal applicants and does not apply to derivative applicants. 8 U.S.C. § 1184(p)(2)(B).

15. A wait list was created by regulation to provide deferred action to an eligible petitioner whenever the statutory cap is reached within a given fiscal year. *See* New Classification for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant Status, 72 Fed. Reg. 53014, 53027 (Sept. 29, 1995) (codified at 8 C.F.R. § 214.14(d)(2)). Deferred action provides several important protections to petitioners that include, among others, eligibility for work authorization. 8 CFR § 214.14(d)(2) ("USCIS, in its discretion, may authorize employment for such petitioners and qualifying family members.").

## The U Visa Administrative Process

16. The administrative processing to accord U nonimmigrant status to eligible petitioners and their qualifying family members is tightly prescribed and regulated:

    A. First, a petitioner must obtain a certification from a law enforcement official that she was the victim of a crime, the crime is a recognized crime under the U Visa program, and that they were, are or likely will be helpful in the investigation, or prosecution of the criminal activity. The USCIS has prescribed that law enforcement officials make

this certification on a particular form, USCIS Form I-918 Supplement B, U Nonimmigrant Status Certification. *See* 8 C.F.R. § 214.14(a)(12).

B. Second, on submission, the USCIS makes a completeness check to verify that all required initial evidence is present. The petition must include Form I-918, Petition for U Nonimmigrant Status; Form I-918, Supplement B, U Nonimmigrant Status Certification; Form I-192, Application for Advance Permission to Enter as Nonimmigrant, if there are any inadmissibility issues; a personal statement describing the criminal activity of which the applicant was a victim; and evidence to establish each eligibility requirement.

    i. To apply for a qualifying family member, which includes a spouse if the petitioner is over 21 years of age (U-2 Visa), the petitioner must submit Form I–918, Supplement A, Petition for Qualifying Family Member of U–1 Recipient, and evidence to establish the relationship. *See* 8 C.F.R. § 214.14(f).

C. Third, USCIS either adjudicates the petition by according U-nonimmigrant status or, in most cases, places the petitioner on the wait-list status for an adjudication. *See* 8 C.F.R. § 214.14(d)(2).

    i. If the statutory cap has not been reached, the USCIS adjudicates the petition for U nonimmigrant status.

    ii. If the statutory cap has been reached, the USCIS *must* place the petitioner on the waiting list until an adjudication can be made. 8 C.F.R. § 214.14(d) ("All eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status must be placed on a waiting list and receive written notice of such placement.").

1. Qualifying members of U-1 petitioners are also granted deferred action. 8 C.F.R. § 214.14(d)(2).
  D. Once the individual has been granted deferred action, they may apply for and receive employment authorization by submitting Form I-765. 8 C.F.R. § 214.14(c)(7).
    i. Likewise, a noncitizen granted U-2 nonimmigrant status as a qualifying family member may receive employment authorization by submitting Form
17. I-765. 8 C.F.R. § 214.14(f)(7).

### *Bona Fide* Screening

18. Congress granted USCIS the authority to grant work authorization for petitioners with pending, *bona fide* applications. 8 U.S.C. § 1184(p)(6) ("The Secretary may grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 101(a)(15)(U)").

19. A *bona fide* application means an application where there appears to be no instance of fraud in the application, the application is complete, properly filed, contains an LEA endorsement, includes completed fingerprint and background checks, and presents *prima facie* evidence to show eligibility for U nonimmigrant status. *See, e.g.*, 8 C.F.R. § 214.11(k) (defining "bona fide" for related statutory nonimmigrant program).

### FACTUAL ALLEGATIONS

20. Mr. Galeano was born in El Progreso, Yoro, Honduras on February 22, 1985.[3]

21. Ms. Apolinar was born in Copalillo, Guerrero, Mexico on August 18, 1991.[4]

22. Mr. Galeano has been living in the United States since 2006.

---

[3] **Exhibit C**, Mr. Galeano's Birth Certificate with Certified Translation.
[4] **Exhibit D**, Ms. Apolinar's Birth Certificate with Certified Translation.

23. Mr. Galeano married Ms. Apolinar in Charlotte, Mecklenburg County, North Carolina on September 21, 2013.[5]

24. On February 2, 2022, Mr. Galeano, over the age of 21, was the victim of a violent robbery in Charlotte, Mecklenburg County, North Carolina. He possessed information about the crime and fully cooperated with the case's investigation.[6]

25. Mr. Galeano suffered from prolonged emotional and mental distress after being the victim of violent criminal activity.

26. Mr. Galeano has never refused or failed to help the government, and he is willing to help them in any future investigations.

27. The local law enforcement investigation, aided by Mr. Galeano, gave rise to case numbers 2CR203407, 09, and 11, and Mr. Galeano cooperated as a victim.[7]

28. The Mecklenburg County District Attorney's Office certified that Plaintiff was helpful in the investigation.[8]

29. On December 11, 2024, Mr. Galeano submitted a complete and substantively approvable application for nonimmigrant status to the USCIS Vermont Service Center, through Form I-918, Application for U Nonimmigrant Status.[9] 8 C.F.R. § 214.14(c)(1).

30. On December 11, 2024, Mr. Galeano, over 21 years old, also submitted on behalf of Ms. Apolinar a complete and substantively approvable U-2 Visa petition to the USCIS Vermont Service Center, through Form I–918, Supplement A, Petition for Qualifying Family Member of U–1 Recipient.[10] 8 C.F.R. § 214.14(f)(1).

---

[5] **Exhibit E,** Marriage Certificate.
[6] **Exhibit F**, Supplement B to Form I-918.
[7] *Id.*
[8] *Id.*
[9] **Exhibit A.**
[10] **Exhibit B**.

31. On that same date, Mr. Galeano submitted a complete and approvable Form I-765, Application for Employment Authorization.[11]

32. Likewise, on that same date, Ms. Apolinar submitted a complete and approvable Form I-765, Application for Employment Authorization.[12]

33. USCIS will only issue Receipt Notices for petitions and applications that are complete.

34. USCIS confirmed receipt of Plaintiffs' Form I-918 and Form I-765 by issuing a Receipt Notice.[13]

35. On December 18, 2024, USCIS informed Mr. Galeano that his biometrics would be reused for his application for U nonimmigrant status.[14] Hence, USCIS continued processing the case.

36. On December 21, 2024, USCIS scheduled Ms. Apolinar for a biometrics appointment on January 8, 2025, for her application for U-2 nonimmigrant status.[15] Ms. Apolinar attended this appointment.

37. There is no evidence of fraud in the applications, and Plaintiffs attached compelling evidence showing eligibility for U nonimmigrant status.

38. Over seven (7) months have elapsed since Plaintiffs filed their complete and approvable applications for U nonimmigrant status.

39. Beyond reusing biometrics and scheduling a biometrics appointment, the Defendants have taken no action on Plaintiffs' applications since they were properly filed.

40. The delay has harmed Mr. Galeano in his ability to maintain a livelihood due to still not possessing work authorization, which disallows him from having a North Carolina driver's license. The delay has also negatively affected his other daily activities.

---

[11] **Exhibit G**, Receipt Notice for Mr. Galeano's Form I-765.
[12] **Exhibit H**, Receipt Notice for Ms. Apolinar's Form I-765.
[13] **Exhibits A, B, G, and E.**
[14] **Exhibit I**, Biometrics Notice for Mr. Galeano.
[15] **Exhibit J**, Biometrics Appointment Notice for Ms. Apolinar.

41. The delay has harmed Ms. Apolinar in her daily activities.

## CLAIMS FOR RELIEF

### COUNT I
### Unreasonable Delay in Agency Action
### 5 U.S.C. § 555(b)

42. Plaintiffs reallege and incorporate by reference paragraphs 1 through 41 of the Complaint as if fully stated herein.

43. Defendant USCIS adjudicates U nonimmigrant status petitions and has full jurisdiction over Mr. Galeano's submitted application through Form I-918 and his petition for Ms. Apolinar through Supplement A to Form I-918.

44. The Defendants have a clear, statutory, nondiscretionary obligation to process Mr. Galeano's application and petition for Ms. Apolinar for U nonimmigrant status, as well as to waitlist placement, within a reasonable time, both for Mr. Galeano and his qualifying family member, Ms. Apolinar. 5 U.S.C. § 555(b).

45. The Defendants' delay in taking any action over seven months is unreasonable and therefore violates 5 U.S.C. § 555(b).

46. No other adequate remedy is available, since Plaintiffs have exhausted all administrative remedies and have waited over seven months.

47. Defendants' delay has no substantial justification

### COUNT II
### Mandamus
### 28 U.S.C. § 1361

48. Plaintiffs reallege and incorporate by reference paragraphs 1 through 41 of the Complaint as if fully stated herein.

49. The Mandamus Act, 28 U.S.C. § 1361, grants authority to courts to compel defendants to perform a duty owed to plaintiffs.

50. Defendant USCIS adjudicates U nonimmigrant status petitions and has full jurisdiction over Mr. Galeano's submitted application through Form I-918 and his petition for Ms. Apolinar through Supplement A to Form I-918.

51. The Defendants have a clear, statutory, nondiscretionary obligation to place all eligible petitioners and their qualifying family members for U nonimmigrant status on the waiting list, that is, Plaintiffs. 8 C.F.R. § 214.14(d).

52. Therefore, the Defendants have a duty to place Plaintiffs on the waiting list.

53. The Defendants' failure to perform this duty for over seven months violates the regulation.

54. No other adequate remedy is available, since Plaintiffs have exhausted all administrative remedies and have waited over seven months.

55. Defendants' delay has no substantial justification.

**COUNT III**
**Unreasonable Delay in Agency Action**
***Bona Fide* Work Authorization**

56. Plaintiffs reallege and incorporate by reference paragraphs 1 through 41 of the Complaint as if fully stated herein.

57. Under 8 U.S.C. § 1184(p)(6), the Defendants have a clear, statutory, nondiscretionary obligation to issue, within a reasonable time, work authorization for individuals who have presented *bona fide* petitions for U nonimmigrant status their petitioned qualifying family members.

58. Defendant USCIS adjudicates work authorizations based on pending U nonimmigrant status petitions and has full jurisdiction over Plaintiffs' submitted applications through Form I-765.

59. The Defendants have failed to issue work authorization to Plaintiffs for over seven months.

60. The Defendants' failure to issue work authorization to Plaintiffs violates 8 U.S.C. § 1184(p)(6) and 5 U.S.C. § 555(b).

61. No other adequate remedy is available, since Plaintiffs have exhausted all administrative remedies and have waited over seven months.

62. Defendants' delay has no substantial justification.

## **PRAYER FOR RELIEF**

**WHEREFORE**, and in light of the foregoing, Plaintiff prays that this Court:

A. Assume jurisdiction over this matter;

B. Declare that Defendants have a duty to place Plaintiffs on the waiting list for U nonimmigrant status and grant deferred action;

C. Order Defendants to comply with 8 C.F.R. § 214.14(d)(2) and place Plaintiffs on the U Visa waitlist;

D. Order Defendants to comply with 8 U.S.C. § 1184(p)(6) and grant Plaintiffs work authorization;

E. Award Plaintiff reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 2412; and

F. Award all other relief to Plaintiffs that it deems just, equitable, and proper.

DATED, this the 28th day of July, 2025.

/s/ Carnell Johnson
**Johnson & Nicholson, PLLC**
Carnell Johnson
Attorney for Plaintiff
Johnson & Nicholson, PLLC
5806 Monroe Road, Suite #102
Charlotte, North Carolina 28212
Tel: (704) 375-1911
Fax: (704) 375-1919
Email: cj@johnnichlaw.com