IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:25-CV-00552-KDB-SCR

| | |
|---|---|
| MARLON GUARDADO GALEAS AND ANGELICA APOLINAR JULIAN,<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, JOHN DOE, ANGELICA ALFONSO-ROYALS, AND CHRISTOPHER HEFFRON,<br><br>Defendants. | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss (Doc. No. 9) Plaintiffs' Amended Complaint (Doc. No. 4), which asks the Court to compel Defendants to place them on the U-visa Waiting List and grant them work authorization. The Court has carefully considered this motion, to which Plaintiffs have not responded. For the reasons discussed below, the Court will **GRANT** the motion.

I.     LEGAL STANDARD

A. **Motion to Dismiss, Fed. R. Civ. P. 12(b)(1)**

Under Federal Rule of Civil Procedure 12(b)(1), a party may seek dismissal based on the court's "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "The United States Courts are courts of specifically limited jurisdiction and may exercise only that jurisdiction which Congress has prescribed." *Chris v. Tenet*, 221 F.3d 648, 655 (4th Cir. 2000) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). A court cannot exercise subject-matter jurisdiction "over an individual who does not have standing." *Ansley v. Warren*, No. 1:16-cv-

1

00054, 2016 WL 5213937, at *9 (W.D.N.C. Sept. 6, 2016) (quoting *AtlantiGas Corp. v. Columbia Gas Transmission Corp.*, 210 F. App'x 244, 247 (4th Cir. 2006)). Therefore, whether the court holds subject-matter jurisdiction over an action must be considered before addressing its merits. *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999).

The plaintiff bears the burden of proving that subject-matter jurisdiction exists, but the court affords the same procedural protections applicable to motions brought under Fed. R. Civ. P. Rule 12(b)(6). *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *Maryland Shall Issue, Inc. v. Hogan*, 963 F.3d 356, 361 (4th Cir. 2020). That is, the court must accept the facts alleged in the complaint as true, "and the defendant's challenge must be denied if the complaint alleges sufficient facts to invoke subject-matter jurisdiction." *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017). Moreover, the court construes *pro se* pleadings liberally in considering a motion to dismiss, even though it is "not required to act as an advocate" for a pro se litigant. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Gordon v. Leeke*, 574 F.2d 1147, 1152 (4th Cir. 1978).

### B. Motion to Dismiss, Fed. R. Civ. P. 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Court of Appeals of Maryland*, 566 U.S. 30 (2012). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, ... bare assertions devoid of further factual

enhancement[,] ... unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Construing the facts in this manner, a complaint must only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotations omitted). Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

In considering a motion to dismiss, "a court considers the pleadings and any materials 'attached or incorporated into the complaint.'" *Fitzgerald Fruit Farms LLC v. Aseptia, Inc.*, 527 F. Supp. 3d 790, 796 (E.D.N.C. 2019) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011)). "[A] court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint ... so long as the authenticity of these documents is not disputed." *Chapman v. Asbury Auto. Grp., Inc.*, No. 3:13 cv 679, 2016 WL 4706931, at *1 (E.D. Va. Sept. 7, 2016) (quoting *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006)); *see also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159 (4th Cir. 2016). However, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted).

## II.  FACTS AND PROCEDURAL HISTORY

Plaintiff Marlon Guardado Galeas ("Guardado") is a citizen of Honduras, although he has resided in the United States since 2006, and is married to Plaintiff Angelica Apolinar Julian ("Apolinar"), a citizen of Mexico. Doc. No. 4 ¶¶ 20–21, 23. In 2022, Guardado was the victim of an armed robbery in Charlotte, North Carolina, *id.* ¶ 24, and he "fully cooperated" with the

authorities and the Mecklenburg County District Attorney's Office during their investigation of the crime. *Id*. ¶¶ 24, 27–28. Seeking to lawfully stay and work in the United States, in December 2024, Guardado and Apolinar filed Forms I-918 Application for U Nonimmigrant Status, and I-918 Supplement A, Petition for Qualifying Family Member of U-1 Recipient.[1] *Id*. ¶¶ 29–30. At the same time, Guardado and Apolinar each filed a Form I-765 Application for Employment Authorization. *Id*. ¶¶ 31–32.

Only seven months after these applications, Guardado and Apolinar initiated this action in July 2025, alleging Defendants' failure to adjudicate their petitions within that period is "unreasonable," has impaired their "daily activities," and violates the Administrative Procedure ("APA"). They ask the Court to compel Defendants to place them on the U-visa waitlist pursuant to 8 C.F.R. § 214.14(d)(2) and the Mandamus Act, and to grant them work authorization pursuant to 8 U.S.C. § 1184(p)(6). *Id.* at 10-12. Defendants filed a motion to dismiss in November 2025, to which Guardado and Apolinar did not respond. The matter is now ripe for this Court's review.

### III. DISCUSSION

The Immigration and Nationality Act of 1952 ("INA") grants the Executive Branch broad authority over the admission of "aliens" into the United States and the conditions governing such admission. *See* Pub. L. No. 82-414, § 101, 66 Stat. 163 (1952) (codified as amended at 8 U.S.C. § 1101) (defining "alien" as "any person not a citizen or national of the United States"). The INA charges the Secretary of Homeland Security "with the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens." 8 U.S.C. § 1103(a)(1). To carry out these responsibilities, the Secretary is empowered to "establish such

---

[1] Guardado also filed a completed Form I-918 Supplement B, a certification completed by the Mecklenburg County District Attorney's Office confirming that he cooperated with it during the investigation of the crime of which he was a victim.

4

regulations; prescribe such forms of bond, reports, entries, and other papers; issue such instructions; and perform such other acts as he deems necessary for carrying out his authority under the provisions of this chapter." § 1103(a)(3). The Secretary has delegated much of this authority to the United States Citizenship and Immigration Services ("USCIS"). *See* 6 U.S.C. § 112(b)(1); 8 C.F.R. § 2.1.

Congress created the U nonimmigrant visa ("U-visa") in October 2000 through the Victims of Trafficking and Violence Protection Act of 2000. *Andrade Carranza v. Cuccinelli*, No. 219CV03078BHHMGB, 2020 WL 6292639, at *1 (D.S.C. Mar. 23, 2020), *report and recommendation adopted,* No. 2:19-CV-3078-BHH, 2020 WL 5810516 (D.S.C. Sept. 30, 2020) (citing Pub. L. No. 106-386, 114 Stat. 1464). The U-visa classification is reserved for noncitizens who are victims of certain serious crimes committed in the United States and who assist law enforcement in the investigation or prosecution of those offenses. *See* 8 U.S.C. § 1101(a)(15)(U). To qualify, a petitioner must demonstrate that he:

> (1) has suffered substantial physical or mental abuse as a result of having been a victim of criminal activity; (2) possesses information concerning [the] criminal activity; (3) has been helpful, is being helpful, or is likely to be helpful to [government officials] investigating or prosecuting [the] criminal activity; and (4) the criminal activity is a covered offense that violated the laws of the United States or occurred in the United States ... or the territories and possessions of the United States.

*Gonzalez v. Cuccinelli*, 985 F.3d 357, 363 (4th Cir. 2021) (first quoting § 1101(a)(15)(U)(i); and then citing 8 C.F.R. § 214.14(b)) (internal quotations omitted).

USCIS has exclusive jurisdiction over all petitions for U-visas. *Andrade Carranza,* 2020 WL 6292639, at *1 (first citing Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135; and then citing 8 C.F.R. § 214.14(c)(1)). A petitioner must submit Form I-918, Petition for U Nonimmigrant Status and Form I-918 Supplement B, a law-enforcement certification attesting

5

that the petitioner has been, is being, or is likely to be helpful in the investigation or prosecution of qualifying criminal activity. *Id.* (citing 8 C.F.R. §§ 214.14(c)(1), (c)(2)(i)). "If the USCIS approves the petition and the petitioner is present in the United States, he will receive lawful nonimmigrant status for up to four (4) years." *Id.* (citing § 214.14(c)(5), (g)(1)). USCIS automatically issues an Employment Authorization Document incident to the grant of U-visa status. 8 C.F.R. § 214.14(c)(7). Petitioners may also seek derivative U-visa status and employment authorization for qualifying family members. § 214.14(f).

Congress, however, imposed a statutory cap of 10,000 principal U-visas per fiscal year. 8 U.S.C. § 1184(p)(2)(A). And, demand has consistently exceeded this cap. *Gonzalez,* 985 F.3d at 363. In response, USCIS established in 2007 a regulatory waiting list ("Waiting List") for eligible petitioners who cannot receive U-visa status solely because the annual cap has been reached. *See* 8 C.F.R. § 214.14(d)(2). Under this provision, all eligible petitioners who cannot be granted U-visa status due to the cap "must be placed on a waiting list," with priority determined by filing date. *Id.* Petitioners on the Waiting List receive deferred action or parole, and "USCIS, in its discretion, may authorize employment" for them and their qualifying family members. *Id.* Additional regulations require USCIS to adjudicate employment authorization applications within 90 days, with failure to do so resulting in the temporary grant of employment authorization for up to 240 days. 8 C.F.R. § 274a.13(d) (2007).

Congress amended the statutory scheme in December 2008 through the William Wilberforce Trafficking Victims Protection Reauthorization Act ("TVPRA"), Pub. L. No. 110-457, 122 Stat. 5044. The TVPRA amended 8 U.S.C. § 1184(p)(6), to authorize the Secretary of Homeland Security to "grant work authorization to any alien who has a pending, bona fide application" for U-visa status—that is, petitioners whose applications have not yet been

6

adjudicated for placement on the Waiting List. *Gonzalez,* 985 F.3d at 364. This authority is discretionary, and work authorization is primarily administered through the Waiting List. *Id.*

Taken together, the statutory and regulatory provisions create a "three-tiered structure" for U-visa petitioners. *Id.* First, petitioners who have neither been granted U-visa status nor placed on the Waiting List receive no immigration status or work authorization. *Id.* Second, eligible petitioners who cannot receive a visa due to the statutory cap must be placed on the Waiting List, at which point they become "entitled to deferred action and may be granted work authorization." *Id.* (first citing 8 C.F.R. § 214.14(d)(2); and then citing 8 C.F.R. § 274a.12(c)(14)). Third, petitioners granted U-visa status obtain temporary lawful presence and must be issued employment authorization. *Id.* (first citing 8 U.S.C. § 1184(p)(3)(B); and then citing 8 C.F.R. § 214.14(c)(7)).

It is within this framework that the Court considers Plaintiffs' claims. Guardado and Apolinar are statutory aliens who have petitioned for U-visas and who seek, pending the grant of those petitions, to receive pre-Waiting List work authorization. Their Amended Complaint offers two grounds for this relief. First, they allege that Defendants unreasonably delayed or unlawfully withheld adjudication of their applications for work authorization while they were waiting to be placed on the wait list in violation of the Administrative Procedure Act ("APA"). Second, Guardado and Apolinar allege that Defendants have unreasonably delayed adjudicating their U-visa petitions—and by extension unreasonably delayed and placing them on the Waiting List, in violation of the APA. Under these facts they also assert a mandamus claim.

A.  **Unreasonable Delay in Adjudicating Bona Fide Determination**

Defendants contend that Plaintiffs' first claim should be dismissed for lack of subject matter jurisdiction because they cannot identify a non-discretionary duty that Defendants failed to perform or otherwise violated. *See* Doc. No. 9 at 9. The Court agrees.

The Administrative Procedure Act ("APA") permits suit by "[a] person suffering [a] legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. The statute defines "agency action" broadly to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). When an agency fails to act, the APA authorizes judicial relief: "[t]he reviewing court shall … compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); *see also* 28 U.S.C. § 1331 (providing federal-question jurisdiction over APA claims). The APA further directs that an agency "shall proceed to conclude a matter presented to it … within a reasonable time." 5 U.S.C. § 555(b).

But the Court's authority to compel agency action unlawfully withheld or unreasonably delayed is limited. *Gonzalez,* 985 F.3d at 365.[2] Most relevant here is the limitation inherent in 5 U.S.C. § 706(1). A court may compel only "agency action" that has been "unlawfully withheld or unreasonably delayed." § 706(1). The Supreme Court has construed this authority narrowly, holding that a claim "can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Norton v. Southern Utah Wilderness Alliance,* 542 U.S. 55, 64 (2004). Thus, "[w]here an agency 'fails to take a *discrete* agency action that it is *required to take*,' the APA creates a private cause of action for a party aggrieved by that agency's unreasonable delay to compel such action." *Fed. Energy Regul. Comm'n v. Powhatan Energy Fund, LLC*, 949 F.3d 891, 903 (4th Cir. 2020) (quoting *Norton*, 542 U.S. at 64) (citation omitted). Conversely, where an agency is not legally required to act, a court lacks authority to compel

---

[2] For example, the Court's authority does not extend where "statutes preclude judicial review." 5 U.S.C. § 701(a)(1); *see also* 8 U.S.C. § 1252(a)(2)(B)(ii). Nor does it apply where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *see also Heckler v. Chaney*, 470 U.S. 821, 831–33 (1985).

8

action—much less to accelerate it. *Gonzalez,* 985 F.3d at 366 (citing *Norton*, 542 U.S. at 63 n.1); *see also* 8 U.S.C. § 1184(p)(6) (the Secretary "*may* grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status …") (emphasis added).

Indeed, as the Fourth Circuit has recently made clear, courts lack jurisdiction over claims for work authorization in this context because neither the Secretary nor USCIS is "*required* to adjudicate … requests for work authorization—meaning that the failure to adjudicate these claims [is] not unlawful and [any alleged] delay in adjudicating these claims [is] not unreasonable." *Gonzalez,* 985 F.3d at 366. Accordingly, because Guardado and Apolinar's first claim challenges Defendants' alleged withholding or delay in adjudicating their requests for work authorization prior to placement on the U-visa Waiting List, the Court lacks jurisdiction to consider and must dismiss that claim.

B.  **Unreasonable Delay in U-Visa Waitlist Placement and Claim for Mandamus**

Defendants next contend that Guardado and Apolinar's second APA claim should be dismissed because it is not ripe, or in the alternative, that a delay of eleven (now thirteen) months is not unreasonable as a matter of law. Doc. No. 9 at 16.

"A case fails for lack of ripeness 'when the parties point only to hypothetical, speculative, or illusory disputes as opposed to actual, concrete conflicts.'" *Patel v. Noem*, 788 F. Supp. 3d 950, 956 (N.D. Ill. 2025) (quoting *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008)). These factors do not apply here. Guardado and Apolinar's assertion that they are entitled to a waitlist determination is not hypothetical, it is concrete. They allege that they have filed the proper paperwork, and the regulations indicate that USCIS has a duty to make a Waiting List determination. Although a favorable bona fide determination ("BFD") could obviate the need for a Waiting List determination, neither a grant nor a denial of a BFD is a prerequisite to Waiting

9

List adjudication. *Patel,* 788 F. Supp. 3d at 956. Ripeness therefore poses no issue. Nevertheless, the Court will dismiss the claim because Guardado and Apolinar have failed to plausibly allege that a thirteen-month delay is unreasonable.

U-visas are "a discretionary form of relief" in that "[a] person who meets the statutory criteria is only eligible for such a visa, not entitled to one as a matter of right." *Andrade Carranza,* 2020 WL 6292639, at *10 (citing *Torres-Tristan v. Holder*, 656 F.3d 653, 656 n.3 (7th Cir. 2011)). Further, the statutory language is clear that USCIS will determine, "*in its sole discretion*," whether the petitioner meets the requirements for U–1 nonimmigrant status. *See* 8 C.F.R. §§ 214.14(c)(4), (c)(5)(i). Even so, "Congress mandated that USCIS pass implementing regulations for the administration of U visas." *Gonzalez,* 985 F.3d at 374 n.10 (citing 8 U.S.C. §§ 1101(a)(15)(U)). In doing so, USCIS committed itself by regulation to place eligible applicants on the Waiting List. *Id.* (citing 8 C.F.R. § 214.14(d)(2)). § 214.14(d)(2) states that "[a]ll eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status *must be placed on a waiting list ….*" § 214.14(d)(2) (emphasis added).

Because no statutory provision grants USCIS discretion to disregard this requirement, the regulations supply a sufficient basis for judicial review of an alleged unreasonable delay. *See Patel,* 788 F. Supp. 3d at 956; *see also Andrade Carranza, 2*020 WL 6292639, at *5 ("Because ... USCIS has a nondiscretionary duty to determine a U-visa petitioner's eligibility for the [w]aiting [l]ist, most federal courts have concluded that claims alleging unreasonable delay in relation to such decisions are subject to judicial review."). Otherwise, USCIS would possess "unfettered discretion to relegate [foreign nationals] to a state of 'limbo,' leaving them to languish there indefinitely." *Kim v. Ashcroft*, 340 F. Supp. 2d 384, 393 (S.D.N.Y. 2004).

Although the Supreme Court has not articulated a definitive standard for "how long is too long to wait for an agency adjudication," most lower courts apply the six factors set forth in *Telecommunications Research & Action Ctr. ("TRAC") v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984). *Gonzalez,* 985 F.3d at 375. Those factors consider: (1) the time an agency takes to act "must be governed by a rule of reason;" (2) when Congress has supplied a timetable or otherwise indicated the pace at which it expects the agency to proceed, that statutory scheme informs the rule-of-reason inquiry; (3) delays that may be tolerable in the context of economic regulation are less so when human health and welfare are implicated; (4) a court must consider the effect of expediting delayed action on agency activities of higher or competing priority; (5) the nature and extent of the interests prejudiced by delay are relevant; and (6) a finding of unreasonable delay does not require any showing of bad faith or impropriety on the part of the agency. *Id* (citing *TRAC*, 750 F.2d at 80) (citations omitted). Although the "district court is not limited to these factors and is not required to use them," the Court finds them instructive and addresses each in turn. *Id.*

"The first factor is the most important," *Mueller v. Blinken,* 682 F. Supp. 3d 528, 538 (E.D. Va. 2023), and "§ 706(1) injects discretion into the district court's analysis by using reasonableness as its touchstone." *South Carolina v. United States*, 907 F.3d 742, 760 (4th Cir. 2018) (citing *Cobell v. Norton*, 240 F.3d 1081, 1096 (D.C. Cir. 2001)) (internal quotations omitted). "'Absent a congressionally supplied yardstick, courts typically turn to case law as a guide' to assess whether a given period of delay is reasonable." *Mueller,* 682 F. Supp. 3d at 538 (citation omitted). Numerous courts, including within the Fourth Circuit, have held that less than two-year delays in this context are not unreasonable. *See, e.g., id.* at 537–39; *Begum v. United States Dep't of State*, No. 1:22-CV-00478-JMC, 2022 WL 16575703, at *7 (D. Md. Oct. 31, 2022) (25-month delay between transfer of case to embassy and filing suit and 33-month delay between case transfer to

court's opinion not unreasonable); *Nusrat v. Blinken*, No. 1:21-cv-2801, 2022 WL 4103860, at *6 (D.D.C. Sept. 8, 2022) (delay of 32 months not unreasonable). USCIS' published processing estimates likewise indicate that 80% of U-visa petitions take up to 28.5 months to reach a BFD—more than double the time Guardado's and Apolinar's petitions have been pending. Doc. No. 9 at 17. Thus, factor one weighs in Defendants' favor.

Because Congress has supplied no timetable, factor two does not favor either party.

Factors three and five consider whether "human health and welfare are at stake" and the extent of prejudice caused by delay. *TRAC*, 750 F.2d at 80. Guardado alleges that Defendants' delay has prevented him from working and obtaining a driver's license. Doc. No. 4 ¶ 40. Both he and Apolinar also assert that the delay has affected their "daily activities." *Id.* ¶¶ 40–41. These allegations place some weight on Guardado's side of the scale, though the prejudice is "not unexpected or unusual." *Telukunta v. Mayorkas,* No. 2:21-CV-10372, 2021 WL 2434128, at *3 (E.D. Mich. June 15, 2021) (finding factors three and five "slightly favor[ed]" plaintiff because she could not work until her applications were approved, though "the prejudice against [p]laintiff is not unexpected or unusual," and noting that plaintiff's "eight-month waiting period" was "below the current processing times for her visas"). However, Apolinar's generalized assertion that her daily activities have been affected, without more, is insufficient to tip these factors in her favor. Therefore, on balance, factors three and five weigh slightly in favor of Guardado, but favor Defendants as to Apolinar.

The fourth factor—the effect of expediting delayed action on agency activities of a higher or competing priority—also favors Defendants. *See Begum,* 2022 WL 16575703, at *8. Courts may decline to intervene when "a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." *Id.* (quoting *Mashpee*

12

*Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003)) (internal quotations omitted). Ordering USCIS to adjudicate Plaintiffs' petitions ahead of others would reorder the queue in precisely this manner. Thus, this factor weighs in favor of Defendants.

Finally, the sixth factor reminds courts that a finding of unreasonable delay does not require bad faith. *Id.* at *9. While Guardado and Apolinar allege that Defendants cannot justify the delay in processing their petitions, they do not allege that Defendants have acted in bad faith. Accordingly, this factor is neutral.

Considering all of the *TRAC* factors, Guardado and Apolinar have not plausibly alleged a claim of unreasonable delay under the APA. The hardships they identify are "outweighed by the rule of reason supplied by the case law and the fact that granting relief would be at the expense of others without any net gain." *Ahmed v. U.S. Dep't of Homeland Sec.*, No. 21-CV-893 (APM), 2022 WL 424967, at *6 (D.D.C. Feb. 11, 2022). This conclusion likewise disposes of Guardado and Apolinar's mandamus claim. The standard for unreasonable delay under the Mandamus Act is identical to the APA standard. *Ramizi v. Blinken*, 745 F. Supp. 3d 244, 256 (E.D.N.C. 2024), *appeal dismissed,* No. 24-2008, 2024 WL 5509498 (4th Cir. Dec. 9, 2024). Accordingly, the Court will dismiss both the APA and Mandamus Act claims.

### IV.    ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendants' Motion to Dismiss (Doc. No. 9) is **GRANTED**; and
2. The Clerk is directed to close this matter in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: January 5, 2026

Kenneth D. Bell
United States District Judge

13

Case 3:25-cv-00552-KDB-SCR    Document 13    Filed 01/05/26    Page 13 of 13